Benson S. Ogier v. Commissioner.
Ogier v. Commissioner
Docket No. 2548-64.
United States Tax Court
T.C. Memo 1967-93; 1967 Tax Ct. Memo LEXIS 168; 26 T.C.M. (CCH) 448; T.C.M. (RIA) 67093; April 28, 1967
Benson S. Ogier, pro se, 44 E. Broad St., Columbus, Ohio. Gerald W. Fuller, for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined deficiencies in the 1957 and 1958 Federal income tax of petitioner along with additions to tax under section 6653(b) [1] and overassessments of additions to tax under section 6651 as follows: Deficiency
Overassessment
Additions
Additions
to Tax
to Tax
Sec.
Sec.
Year
Tax
6653(b)
6651(a)
1957
$2,906.67
$2,347.79
$447.23
1958
1,043.66
705.33
91.75
Total
$3,950.33
$3,053.12
$538.98
The stipulation of facts appears to concede the taxability of $5,000 alleged by the deficiency notice (item (c), *169 page 2) to have been received by petitioner as a fee in 1957 from Franklin Park Realty Company and leaves open the question of the disallowance of certain nonbusiness deductions for 1957 in the deficiency notice (item (e), page 2). At the trial, however, petitioner asserted that the $5,000 item was in fact the repayment of an indebtedness of Franklin Park Realty Company to petitioner and offered no evidence as to the issue relating to the nonbusiness deductions. At no time has respondent sought to rely on the stipulation as determinative of the treatment of the $5,000 item. In view of the foregoing, we construe the concession in the stipulation of facts to refer to item (e) rather than item (c). Accordingly and taking into account other concessions by the petitioner and respondent, [2] there remains for our determination the issue relating to the $5,000 item and the further issue whether the sums of $2,029.77 and $3,300 received by petitioner from Franklin Park Realty Company in 1957 and 1958, respectively, are taxable as dividends or constitute repayments of indebtedness. *170 Findings of Fact Some of the facts are stipulated and are found accordingly. Benson S. Ogier was a legal resident of Columbus, Ohio, at the time of the filing of the petition herein. He and his wife Julianne Ogier [3] filed joint Federal income tax returns for the years 1957 and 1958 on February 20, 1962 and March 3, 1962, respectively, with the district director of internal revenue, Cincinnati, Ohio. Petitioner was engaged in the real estate brokerage business. Prior to November 29, 1956, petitioner had contracted to purchase property located at 65 and 69 Franklin Park West, Columbus, Ohio, for $95,000. Franklin Park Realty Company (hereafter referred to as "Corporation") was incorporated on November 29, 1956 for the purpose of entering the real estate business. The maximum number of shares authorized was 100, all without par value, and the stated amount of capital with which to begin business was $500. The original shares were issued for $5 per share as follows: Petitioner
49
Michael A. Coughlin
1
Anita Petta
50
*171 Petitioner was president of the Corporation and Anita Petta was secretary and treasurer. Both were directors of the Corporation. At a meeting of the board of directors of the Corporation on November 29, 1956, the following motion was unanimously adopted: On motion duly made and seconded, it was unanimously resolved, and all shareholders being present, to purchase the real estate known as 65 Franklin Park West, Columbus, Ohio and 69 Franklin Park West, Columbus, Ohio, including the furnishings therein, for the sum of $100,000.00, by purchasing from Ben Ogier the contract of sale, which he had with the owners thereof, and purchasing said property in accordance with the terms of said contract of sale. It was further unanimously resolved, upon motion properly made and seconded, that said Ben Ogier be paid the sum of $5,000.00 for said contract. That this corporation borrow the sum of $7,250.00 from Anita Petta and that it borrow the sum of $5,506.39 from Ben Ogier, said sums being the necessary amounts to purchase said property, and it was further resolved that this corporation give its note to said Anita Petta for $7,250.00, payable on demand, and its note for the above two sums *172 to Ben Ogier, making a total sum of $10,506.39, payable upon demand. On November 30, 1956, the Corporation purchased the properties known as 65 and 69 Franklin Park West, including real estate and furnishings, for a total consideration of $95,000 plus insurance adjustments of $200.06. On or about March 15, 1957, petitioner received $6,579.77 from the Corporation and paid this sum, together with a further sum sufficient to cover principal and interest, to Anita Petta in return for her endorsement to petitioner of a $7,250 note of the Corporation. At the same time, Anita Petta transferred to petitioner her 50 shares of stock. On February 17, 1958 and April 15, 1958, loans of $1,200 and $500, respectively, were made by petitioner to the Corporation. On or about September 5, 1958, petitioner received $5,000 from the Corporation. Petitioner did not include any of the amounts he received from the Corporation in 1957 and 1958 in his income. Respondent determined that petitioner received $5,000 taxable as a fee from the Corporation in 1957 and that $2,029.77 received from the Corporation in 1957 and $3,300 ($5,000 he received on or about September 5, 1958, less $1,700 loans on *173 February 17, 1958 and April 15, 1958) received from the Corporation in 1958 were taxable as dividends. Opinion Petitioner's entire case is founded upon the proposition that all of the sums received by him from the Corporation in 1957 and 1958 constituted repayment of monies owed to him by the Corporation. Aside from the resolution of the board of directors of the Corporation on November 29, 1956 and petitioner's own testimony (he was the sole witness) that he "loaned the Corporation money and the Corporation loaned me money and there was no formal entry of these made," the record is utterly silent as to the nature of the arrangements between petitioner and the Corporation. There is no evidence as to whether petitioner in fact received any notes for his alleged original loan of $10,506.39, let alone any indication of the terms and conditions thereof. To be sure, it is stipulated that petitioner purchased from Anita Petta a note of the Corporation in the face amount of $7,250 but here again no terms and conditions of the note were shown, aside from petitioner's statement that when he purchased the note accrued interest was calculated at 6 percent. What little evidence there is *174 seems to negate the existence of any bona fide indebtedness. Petitioner in effect admitted at the trial that the extra $5,000 paid by the Corporation for the assignment of the contract to purchase the real estate was in lieu of the commission to which petitioner would have been entitled on a sale of the property. Petitioner apparently considered the transfer of the contract to the Corporation, in which third persons were shareholders, a sale which he effected as a broker and to which a commission properly attached. The Corporation was thinly capitalized, with $500 being paid for the stock and $17,756.39 in "notes" being issued one day after its incorporation. No interest was ever paid on the "notes." The manner in which funds were allegedly advanced to, and paid back by, the Corporation was most informal, with no recorded evidence thereof. When petitioner purchased Anita Petta's interest in the Corporation, the price was figured for the "note," and the stock was thrown in at no additional cost. We see no point in dissecting the various elements which the decided cases emphasize in determining the existence of a bona fide debtor-creditor relationship. The record herein is so barren *175 as to result in a total failure of proof on the part of petitioner. Accordingly, we sustain respondent's determination that $5,000 received by petitioner in 1957 [4] constituted a fee and that the balance of the sums allegedly advanced were in the nature of equity. Since petitioner made no attempt to prove that the Corporation's earnings and profits were insufficient to cover the distributions herein, [5] we sustain respondent's finding that the amounts of $2,029.77 [6] received in 1957 and $3,300 received in 1958 constituted dividends. *176 Decision will be entered under Rule 50. Footnotes
1. All references are to the Internal Revenue Code of 1954.↩
2. The deficiency notice asserted additions to tax for fraud under section 6653(b) and set forth overassessments of additions to tax for failure to file timely returns under section 6651(a). The stipulation of facts includes a provision recognizing that sections 6651(a) and 6653(a) should apply with the result that the parties have agreed that additions to tax for negligence instead of fraud should be imposed.↩
3. The petition herein was filed only on behalf of petitioner and accordingly has been dismissed for lack of jurisdiction as to Julianne Ogier.↩
4. If a note was in fact issued to cover this $5,000, it is possible that such income might properly have been attributed to 1956, a taxable year not before us, but we have no way of determining on the record herein whether this is what actually occurred. In any event, it would not necessarily follow that a bona fide indebtedness for tax purposes was created so as to avoid categorizing the repayment in 1957 as a dividend.↩
5. The record in a companion case, Franklin Park Realty Co., Docket No. 2547-64, which was settled by the parties, indicates that there probably were sufficient earnings and profits. ↩
6. There is a $450 discrepancy between the amount of $2,029.77 characterized as a dividend in the deficiency notice and the amount, in excess of the $5,000 fee, stipulated to have been received by petitioner from the Corporation in March 1957. The stipulation of facts does not preclude the possibility of petitioner having received other amounts from the Corporation in 1957 and petitioner made no effort to enlighten the Court as to this discrepancy.↩